*Poulard v. Delphin*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of May, two thousand twenty-five.

Present:
      RICHARD C. WESLEY,
      MICHAEL H. PARK,
      BETH ROBINSON,
         *Circuit Judges.*

---

REGINAL POULARD,

      *Plaintiff-Appellant,*

      v.                              24-3015

GUY-MAX DELPHIN, DELPHIN INVESTMENTS, LLC, AMITIE ALTERNATIVE CAPITAL PARTNERS, LLC,

      *Defendants-Appellees.*[*]

---

FOR PLAINTIFF-APPELLANT:      Kevin P. Conway, Conway & Conway, New York, NY.

FOR DEFENDANTS-APPELLEES:      David M. Pohl, Parker Pohl LLP, New York, NY.

---

[*] The Clerk of Court is respectfully directed to amend the caption accordingly.

Appeal from a judgment of the United States District Court for the Southern District of New York (Ramos, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Reginald Poulard sued Defendants-Appellees Guy-Max Delphin, Delphin Investments, LLC, and Amitie Alternative Capital Partners, LLC, alleging that Delphin fraudulently induced Poulard to invest in Delphin's companies. The district court dismissed as untimely all nine of Poulard's claims.[1] It also concluded that six of those claims failed to state a claim for relief. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.    Fraud-Based Claims

Poulard alleged claims for common-law fraud, fraudulent inducement, and fraudulent concealment. On appeal, he argues that the district court erred in finding those claims untimely. We disagree.

Under New York law, a claim for fraud must be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . could with reasonable diligence have discovered it." N.Y. C.P.L.R. § 213(8); *see Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007). "The burden of establishing that the fraud could not have been discovered during the two-year period before the commencement of the action rests on the

---

[1] Poulard brought claims for (1) common-law fraud, (2) fraudulent inducement, (3) fraudulent concealment, (4) breach of contract, (5) breach of fiduciary duty, (6) misrepresentations and omissions, (7) breach of the duty of good faith and fair dealing, (8) conversion, and (9) unjust enrichment.

2

plaintiffs, who seek the benefit of the discovery exception to the six-year statute of limitations." *Siler v. Lutheran Soc. Servs. of Metro. N.Y.*, 10 A.D.3d 646, 648 (2d Dep't 2004). "The test as to when fraud should with reasonable diligence have been discovered is an objective one." *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983) (applying New York law). "[W]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him." *Id*. (quotation marks omitted).

Poulard executed his agreement with Delphin in February 2015 but didn't file his initial complaint until January 2023. His fraud claims are thus time-barred under Section 213(8)'s six-year statute of limitations. Poulard argues that, under the statute's discovery exception, his claims remain timely as to Delphin's alleged misrepresentation that the investment would be used to purchase "shares in various pension funds and pharmaceutical companies." Appellant's Br. at 13. He asserts that he "did not have any reason to suspect his investment funds had been misspent until he was able to obtain bank account statements from Defendants[] in January of 2022." *Id*. at 17. The district court concluded otherwise, finding that Poulard had inquiry notice of that fact in November 2020. We agree.

On November 8, 2020, Poulard emailed Delphin—copying Jacques Armand, a mutual friend who had also invested with Delphin—to express anger about the fact that Delphin had promised but never distributed dividends:

3

> You guys convinced me to join this mess. My Father has been very patient with me for the past 5 years but now he is losing it because he is no longer working so he needs money!!!!!! Additionally, one of my children is supposed to go to University next year with that money I saved for him. I have not seen any bloody cash distribution for the past 5 years. Can you guys tell me what is going on? When will I ever see the cash distribution that Guy-Max has been talking about?

App'x at 105.

When Delphin replied the following day, he claimed that he was "still trying to find a way as we are still not profitable" and pointed out that the "investment funds you provided [were] for the working capital and operation of the company." App'x at 104. That email was sufficient to put Poulard on notice that his investments were not in fact used to purchase equities.[2] So Poulard should have brought his claims under § 213(8)'s discovery exception by November 9, 2022.

Poulard argues that even if he were on inquiry notice as of November 9, 2020, the district court still erred in finding that his investigative efforts were not reasonably diligent "in light of the circumstances at issue here." Appellant's Br. at 17. Those circumstances include the fact that he is "a Haitian immigrant who only obtained United States citizenship in 2023," that he is "an unsophisticated investor who had no prior experience investing in private placements," and that he "spen[t] significant periods of time far outside the United States" because of his employment with the United Nations. *Id*. at 19. But "[t]he inquiry as to whether a plaintiff could, with

---

[2] Three emails sent before November 8, 2020, gave Poulard more reason to suspect that he had invested in a fraudulent scheme and that his money had been spent improperly. On November 1, 2019, Armand emailed Delphin—copying Poulard—to request financial statements "mostly for the sake of transparency (which has been lacking so far)." App'x at 115. That same day, Delphin sent Armand and Poulard tax returns from 2014 through 2018, and in so doing objected to their accusation that Delphin was running a "premeditated dishonest scheme." *Id*. at 113. And on February 26, 2020, Delphin emailed Armand and Poulard a 2018 K1 Form but claimed that "2019 won't be ready for a while" because "[t]here ha[ve] been no transactions for over three year[s] to impact the value of the firm thus K1s haven't changed through 2019." *Id*. at 106.

reasonable diligence, have discovered the fraud turns on whether the plaintiff was possessed of knowledge of facts from which the fraud could be reasonably inferred." *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (cleaned up). Because Poulard had access to such facts by November 2020 but waited until January 2022 to request the bank statements, he did not act with reasonable diligence. His fraud-based claims are thus barred by § 213(8).

## II. Tolling and Estoppel

In the alternative, Poulard offers two reasons for why all nine of his claims survive. First, he argues that Delphin's fraudulent concealment tolls all relevant statutes of limitations. Second, he argues that equitable estoppel achieves the same effect. We disagree.

"New York courts and the courts of this Circuit variously use the terms 'fraudulent concealment,' 'equitable tolling,' and 'equitable estoppel,' not always with clear delineation." *Koral*, 36 F.4th at 409. Indeed, the cases Poulard cites in support of tolling based on fraudulent concealment in fact refer to equitable estoppel. *See Simcuski v. Saeli*, 44 N.Y.2d 442, 448-49 (1978) ("It is the rule that a defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action . . . It is as important to determine the effect of the doctrine of equitable estoppel as it is to determine that it applies."); *see also Kaufman v. Cohen*, 307 A.D.2d 113, 122 (1st Dep't 2003). Under New York law, a claim for tolling based on fraudulent concealment is thus no different from a claim for tolling based on equitable estoppel. *See Koral*, 36 F.4th at 409 n.2 ("New York state courts do not distinguish between the doctrines of equitable tolling and equitable estoppel."). So we can analyze Poulard's arguments under the same equitable-estoppel standard.

5

"In New York, 'equitable estoppel' is applicable (1) where the defendant conceals from the plaintiff the fact that he has a cause of action and (2) where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired." *Koral*, 36 F.4th at 409-10 (quotation marks omitted); *see Zumpano v. Quinn*, 6 N.Y.3d 666, 673 (2006) ("The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense."). Equitable estoppel is an "extraordinary remedy," *Pulver v. Dougherty*, 58 A.D.3d 978, 979 (3d Dep't 2009), and should be "invoked sparingly and only under exceptional circumstances," *Matter of Gross v. N.Y.C. Health & Hosps. Corp.*, 122 A.D.2d 793, 794 (2d Dep't 1986). "A plaintiff seeking to apply the doctrine of equitable estoppel must establish that subsequent and specific actions by defendants somehow kept him or her from timely bringing suit." *Putter v. N. Shore Univ. Hosp.*, 7 N.Y.3d 548, 552 (2006) (cleaned up). In other words, "the plaintiff must demonstrate reasonable reliance on the defendant's misrepresentations." *Zumpano*, 6 N.Y.3d 666, 674 (2006).

Here, Poulard does not show that he was "prevented from filing an action within the applicable statute of limitations due to his . . . reasonable reliance on deception, fraud or misrepresentations." *Putter*, 7. N.Y.3d at 552-53. To be sure, Delphin threatened Poulard and Armand with defamation lawsuits and indicated in January 2020 that Poulard's buyout "will get done." App'x at 107. But Poulard did not establish that those actions prevented him from bringing suit before January 2023. *Cf. Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) ("When a plaintiff relies on a theory of equitable estoppel to save a claim that otherwise appears untimely on its face, the plaintiff must specifically plead facts that make entitlement to estoppel

6

plausible (not merely possible).").[3]   Accordingly, the district court correctly denied tolling and equitable estoppel.

*       *       *

We have considered Poulard's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] We agree with the district court that Poulard's claims were untimely, so we need not reach his arguments concerning whether his amended complaint stated a claim.

7